954 P.2d 686

STATE of Idaho, Plaintiff–Respondent,

v.

Paul McNEW, Defendant–Appellant.

No. 23078.

Court of Appeals of Idaho.

Feb. 26, 1998.

David W. Lohman, Coeur d'Alene, for defendant-appellant.

Alan G. Lance, Attorney General, Kimberly A. Coster, Deputy Attorney General, Boise, for plaintiff-respondent. Kimberly A. Coster argued.

BENGTSON, Judge Pro Tem.

Following a trial by jury, Paul McNew was found guilty of committing lewd conduct with a minor under sixteen years of age, I.C. § 18–1508. A judgment convicting McNew of such offense was entered imposing a unified sentence of four (4) years, consisting of a fixed term of one (1) year, followed by an indeterminate term of three (3) years.

McNew has appealed the conviction. The basis of this appeal is McNew's contention that the trial court erroneously denied his motion to dismiss the criminal information, said motion being predicated upon the grounds that he had been denied his constitutional and statutory right to a speedy trial.

The record before this Court establishes, without cavil, that the criminal information in this case was filed on July 20, 1994, and that the jury trial in this matter did not commence until March 26, 1996. The record further discloses that on March 4, 1996, McNew moved for dismissal of the criminal information, contending that he had been denied his right to a speedy trial. Such motion was denied by the trial court in its "Memorandum Order" filed on March 20, 1996, and this matter proceeded to trial on March 26, 1996, some twenty months after the filing of the criminal information. McNew raises no other issues for consideration by this Court, and thus the sole issue before us is whether the trial court erred in

denying McNew's motion to dismiss the information.

## I.

## STANDARD OF REVIEW

▉▉▉ Whether McNew was denied his right to a speedy trial presents this Court with a mixed question of law and fact. *State v. Rodriquez–Perez*, 129 Idaho 29, 33, 921 P.2d 206, 210 (Ct.App.1996), *citing State v. Wavrick*, 123 Idaho 83, 86, 844 P.2d, 712, 715 (Ct.App.1992). This Court, when faced with mixed questions of law and fact, defers to findings which are founded upon substantial evidence, but freely reviews the trial court's determination as to whether constitutional requirements have been satisfied in light of facts found by the trial court. *Id.*

## II.

## DISCUSSION

### A. Trial Court's Findings of Fact

In its "Memorandum Order" filed March 20, 1996, the trial court denied McNew's motion to dismiss, specifying the factual predicate for denial of such motion in the following language:

For the reasons to follow, the Court denies defendant's motion to dismiss. Trial was initially set to commence 4.5 months following the filing of the Information, and was continued a week before the scheduled commencement upon defendant's motion. The second setting, January 24, 1995, was again aborted by defendant's request for psychiatric evaluation. The delay between the second setting of January 24, 1995, and the September 1, 1995, report on mental status was due to defendant's lack of cooperation in conferring with his counsel and presenting himself for evaluation, the result ultimately being an order to incarcerate him so that the examination could be conducted. When the report on mental status was finally received and counsel had an opportunity to digest the same, the Court calendered (*sic*) the matter for its third setting on March 26, 1995. That delay was due to the congested nature of the Court calendar.

Additionally defendant had expressed through his attorney as early as November 30, 1994, that he was waiving his right to a speedy trial.

*In any event, the Court finds that the majority of the delay to be attributable to defendant, with the last period of delay due to the congested court calendar, a "neutral source."* (Emphasis added).

We first address the question of whether these findings of fact are founded upon substantial evidence.

A careful perusal of the transcript of proceedings conducted before the trial court relevant to the speedy trial issue convinces us that the trial court's findings of fact are indeed predicated upon substantial evidence. Summarizing the record, as well as the transcript, the evidence establishes:

1) McNew appeared in response to a summons on June 20, 1994. The criminal information was filed on July 20, 1994, and on July 29, 1994, he was arraigned and entered a not guilty plea. The District Court set the case for jury trial to commence on December 5, 1994.

2) One week before trial McNew moved for a continuance based upon the state's alleged untimely disclosure of two "potentially exculpatory witnesses." The motion was granted and the trial was reset for January 24, 1995. However, on January 19, 1995, McNew's counsel moved, pursuant to I.C. § 18–211, for a mental evaluation to determine McNew's fitness to stand trial. The motion was granted, and trial was vacated pending the outcome of the examination.

3) The Court appointed a doctor from the Department of Health and Welfare to perform a psychiatric evaluation of McNew, but the doctor disqualified herself, and McNew was then referred to two private physicians, one of whom required cash payment at the time of the examination, and the other would only extend credit if the Court issued an order guaranteeing payment. On April 14, 1995, the Court granted

McNew's motion for an order guaranteeing payment for the evaluation.

4) Thereafter, a problem arose regarding McNew's transportation from his home in St. Maries to the doctor's office in Coeur d'Alene because McNew was not licensed to drive, and neither he nor his defense counsel wanted him to be transported by the Benewah County Sheriff's Office.[1] On May 22, 1995, the Court entered an order stating that if McNew was unable to provide his own transportation to attend his psychiatric evaluation, then transportation would be provided by the sheriff's office, and any statements made during such transport would be inadmissible.

5) Due to reasons not clear from the record, McNew did not present himself for the scheduled evaluation. As a result, the Court, on August 15, 1995, ordered McNew placed in custody on August 20, 1995, to ensure his "presence and sobriety" at the evaluation that was then scheduled for August 22, 1995. On September 1, 1995, the Court received the psychiatric evaluation which found McNew competent to stand trial. Trial was reset for March 26, 1996, and commenced on that date.

We conclude that the trial court's findings of fact pertinent to McNew's motion to dismiss for lack of a speedy trial are supported by substantial evidence.

## B. Application of the Balancing Test

Having concluded that the trial court's findings of fact pertinent to the speedy trial issue are supported by substantial evidence, we now exercise free review to determine whether the trial court erred in denying McNew's motion to dismiss the criminal information for lack of a speedy trial.

McNew asserts that his right to a speedy trial, guaranteed him by the Sixth Amendment to the United States Constitution; Article I, Section 13 of the Constitution of the State of Idaho; and Section 19–3501 of the Idaho Code, was violated. We disagree.

This Court is guided, in substantial part, by the treatment of a speedy trial claim under the United States Constitution, announced in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). There, the United States Supreme Court analyzed such claim by a balancing process in which the Court considered four factors: (1) the length of the delay; (2) the reason or reasons for the delay; (3) the defendant's assertion or nonassertion of speedy trial rights; and (4) the prejudice or lack of prejudice to the defendant occasioned by the delay.

The same *Barker* balancing test is employed in determining whether the right to a speedy trial under Article I, Section 13 of the Idaho Constitution has been violated. *State v. Holtslander*, 102 Idaho 306, 629 P.2d 702 (1981). Additionally, the analysis of speedy trial rights under Idaho Code Section 19–3501 "is closely related to and based upon the analysis applied to constitutional speedy trial guarantees ..." *State v. Rodriquez–Perez*, 129 Idaho 29, 33, 921 P.2d 206, 210 (Ct.App.1996).

We here address the four *Barker* factors in the light of the factual findings of the trial court set out above:

### (1) Length of the delay

The delay in this case was a little over twenty-one (21) months, which is certainly long enough, according to Idaho case law, to trigger judicial scrutiny. *See, e.g., State v. Holtslander*, 102 Idaho 306, 629 P.2d 702 (1981) (delay of nine months between complaint and arrest is sufficient to warrant scrutiny by the court); *Rodriquez–Perez, supra* (delay of thirteen months sufficient to trigger judicial scrutiny); *State v. Beck*, 128 Idaho 416, 913 P.2d 1186 (Ct.App.1996) (de-

---

1. At the April 14, 1995, hearing on the motion for payment of funds, McNew's counsel made the following statements: "Your Honor, I wasn't sure, but it seemed to me borderline malpractice to have an 86-year-old [*sic*] possibly mentally incompetent client spend three hours in a vehicle with a sheriff's deputy where he could say God knows what without the advice and presence of counsel to the sheriff's deputy, which if he is found competent could be used against him in a court of law. I just don't like that for one thing. And then the fact that he wasn't willing to, as well ..."

lay of forty-two days between the expiration of the I.C. § 19–3501 six-month period and the scheduled start of trial was significant); *State v. Wengren,* 126 Idaho 662, 889 P.2d 96 (Ct.App.1995) (delay of one month was "insignificant," but nonetheless sufficient to trigger the court's scrutiny). Furthermore, the nature of the case is of import as to the period of delay that can be tolerated: "[D]elay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Barker,* 407 U.S. at 530–31, 92 S.Ct. at 2192. *See also Rodriquez–Perez,* 129 Idaho at 34, 921 P.2d at 211 (quoting the same language from *Barker*). The case now before us is hardly complex; rather, the acts complained of are alleged to have all been committed by one defendant, at one time, against one victim, in only one manner, and in only one place.

Since we here hold that the twenty-one (21) month period of delay in bringing McNew to trial is sufficient to trigger judicial inquiry, we next look to the reasons for such delay.

### (2) Reasons for the delay

We will initially deal with the first delay of the trial setting. A jury trial was initially set to commence December 5, 1994, approximately four and one-half (4½) months after the filing of the criminal information. However, less than a week prior to the scheduled trial date, McNew moved to continue the trial upon the grounds that the State had failed to timely notify his counsel of the names of "two other possible witnesses who may have exculpatory evidence" in the case. Counsel for McNew stated that he wanted a continuance so he could meet with those two previously nondisclosed witnesses.

The trial judge specifically asked counsel for McNew the following question:

> [D]oes your client understand that if the matter is vacated there is a possibility that it could not be reset within the six months under the speedy trial statute?

McNew's counsel informed the Court that McNew had authorized his counsel, on his behalf, to "waive his right to a speedy trial." McNew's motion for a continuance of the December 5, 1994, trial was granted and trial

was reset for January 24, 1995, which was a mere four days beyond the six-month speedy trial deadline.

It is arguable that this delay from the December 5, 1994, setting was, to some extent, caused by the State's alleged failure to timely disclose the two potentially exculpatory witnesses. Thus, the balancing scale tips ever so slightly in favor of McNew.

Next we take note that although the trial court reset the trial for January 24, 1995, McNew, once again, sought and was granted *another* delay in the commencement of trial so that he could undergo a psychological examination. This second delay in commencement of the trial was solely due to McNew's request and the State did nothing to prevent the matter going to trial on January 24, 1995, as scheduled by the trial court.

Following the vacating of the January 24, 1995, trial, McNew, as specifically found by the trial court, failed to cooperate in the logistics of the psychiatric examination he sought. As the result of such failure to cooperate, the psychological evaluation was not filed with the Court until September 1, 1995. On October 9, 1995, the district court reset the jury trial for March 26, 1996.

■ It is clear that the delay in resetting the trial for a date prior to October 9, 1995, was entirely due to McNew's refusal to cooperate in the preparation of his psychological examination and that the State did nothing to cause or facilitate further delay of the trial. The period of delay attributable to McNew will not be weighed against the State. *State v. Russell,* 108 Idaho 58, 62–63, 696 P.2d 909, 913–14 (1985).

The district court specifically found that any delay occurring after the filing of the psychological examination was entirely due to the Court's congested trial calendar. Thus, this latter cause for delay was "neutral" and not occasioned by either McNew or the State.

We therefore conclude, as the trial court did, that the majority of the delay in proceeding to trial was attributable to McNew.

## C. McNew's Assertion of His Speedy Trial Rights

■ A defendant's assertion of his speedy trial right is entitled to strong evidentiary weight in determining whether he has been deprived of the right. *Barker*, 407 U.S. at 531, 92 S.Ct. at 2192. However, McNew did not attempt to cause the criminal information to be dismissed on speedy trial grounds until approximately three weeks before the third and final trial setting, waiting over twenty months before seeking such dismissal.

■ Although McNew filed a last minute motion to dismiss the criminal information because of a purported failure to provide him a speedy trial, we cannot help but take into consideration the fact that McNew could have filed his motion to dismiss on the speedy trial issue at any time after the expiration of the six-month period following the filing of the criminal information. Instead of doing so, he sought continuances of the trial settings and was, indeed, granted such continuances.

We conclude that McNew's requests for continuances indicate that he did not necessarily want a speedy trial. We also note that except for a brief period of time after McNew had failed to cooperate in the process of preparation of the psychological examination, McNew was at liberty, and not in custody, while awaiting trial.

In summary, we rely on the following excerpt from *Barker*:

[B]arring extraordinary circumstances, [the court] would be reluctant indeed to rule that a defendant was denied this constitutional right on a record that indicates, as does this one, that the defendant did not want a speedy trial.

*Barker*, 407 U.S. at 536, 92 S.Ct. at 2195.

## D. Prejudice to McNew

■ The nature and extent of prejudice arising out of a delay in bringing a criminal action to trial is the final and most important of the *Barker* factors. *State v. Cotant*, 123 Idaho 787, 788, 852 P.2d 1384, 1385 (1993); *State v. Russell*, 108 Idaho 58, 62, 696 P.2d 909, 913 (1985).

*Barker* held that extended pretrial incarceration, prolonged anxiety and concern over the pending charges, or the impairment of a defendant's ability to present a defense may prejudice a defendant and of these possible forms of prejudice, impairment of the defense is the most serious. *See also Rodriquez–Perez*, 129 Idaho at 37, 921 P.2d at 214.

■ The district court found that McNew had failed to demonstrate prejudice. McNew remained free pending trial except for two days during which he was incarcerated to ensure his presence and sobriety for the psychological examination. Although he argues that the delay impaired his defense, nothing in the record supports this contention.

■ McNew further contends that prejudice should be presumed in this case, relying on, *inter alia, State v. Holtslander*, 102 Idaho 306, 629 P.2d 702 (1981). However, the Court in *Holtslander* cautioned against the use of a presumption of prejudice:

[W]e ... caution against the use of a presumption of prejudice *in cases such as the one at bar where there is no indication of prejudice nor claim of prejudice* by the defendant.... The [*Barker*] balancing test allows enough flexibility in considering the various factors without presuming prejudice from circumstances *like those of this case.*

*Holtslander*, 102 Idaho at 313, 629 P.2d at 709 (emphasis added).

We are satisfied that the district court correctly found that McNew had failed to demonstrate that he was prejudiced by delay in bringing him to trial. His bald assertions of prejudice are not supported by the record.

■ Consequently, we affirm the trial court's refusal to dismiss the criminal information and thus affirm the judgment of conviction.

LANSING, C.J., and PERRY, J., concur.